A. & B. Export and Import Corporation, Respondent, *v.* Franco-American Chemical Company, Inc., and Alfred P. Robitaille, Appellants.

First Department, December 5, 1919.

Sales — fraud — action against corporation for fraudulently representing quality of goods, and that dummy corporation owned by it was reliable — measure of damages for failure by vendor to deliver goods conforming to sale made by description.

In an action to recover damages claimed to have been sustained by the plaintiff by reason of the false and fraudulent representations of the defendant, it appeared that the defendant offered for sale two cars of caustic soda of a kind well known to the trade, and that the plaintiff communicated with the defendant by telephone and purchased said cars of soda, but said order was confirmed by an irresponsible dummy corporation, which was owned by the defendant and used by it as a means of avoiding liability in case of trouble arising from business transactions. As soon as the plaintiff received confirmation of its order it communicated by telephone with the defendant and was assured by it that the said corporation accepting the order was all right and a responsible concern, and the plaintiff relying upon such representation accepted the soda and paid the purchase price. Thereafter it was discovered that the soda was of an inferior quality and not of the kind purchased, and it also appeared that it had been sold originally to the defendant as soda of an inferior quality.

On all the evidence it was *held* that the jury were warranted in finding that the representations in question were made; that they were relied on by plaintiff and known by the defendant to be false; that the sale was made by description and not by sample, and that the defendant well knew that the goods in question were not of the quality described; that the measure of damages is the difference between the purchase price and the market price at the time and place of delivery, with the addition of interest from the time of payment.

It was reversible error for the court to charge that the measure of damages was the difference between the purchase price and the market value at the time of the delivery, and in addition thereto the difference between the purchase price and the price received by the plaintiff on the sale of the inferior goods or whatever the market price of such goods might then be at the time of delivery.

Appeal by the defendants, Franco-American Chemical Company, Inc., and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of March, 1919, upon

the verdict of a jury, and also from an order entered in said clerk's office on or about the 10th day of April, 1919, denying the defendants' motion for a new trial made upon the minutes.

*Milton Mayer* of counsel [*Goodman Block* with him on the brief], for the appellants.

*Neil P. Cullom* of counsel [*Cullom & Rinke*, attorneys], for the respondent.

Dowling, J.:

This action was brought to recover the sum of $4,094.07 for damages claimed to have been sustained by plaintiff by reason of the false and fraudulent representations of defendants arising out of the following facts: Defendant company in May, 1917, offered for sale to the trade two cars of caustic soda, seventy-six per cent solid, at six and a quarter cents per pound. This offer was communicated to plaintiff by defendant company by means of a postal card the cancellation on which shows that it was deposited in the post office May 25, 1917. Two or three days afterwards, the manager of plaintiff's chemical department communicated over the telephone with the defendant Robitaille, president of the defendant corporation. The manager asked if the two cars which had been offered by postal card by the defendant company were still available, and what was the lowest price thereon, and Robitaille said that they were available and he would take one-eighth cent less per pound for them. Thereafter, on May twenty-ninth, plaintiff received the following letter:

" Telephone $\frac{2134}{2135}$ Beekman

" K. F. G. Products Corporation,
" Industrial Chemicals, Colors and other
" Raw Materials for the Industries
· " 116 Nassau Street
" New York, *May* 29, 1917.

" A. & B. Export & Import Co.,
" 68 Broad St.,
" New York City:

" Gentlemen.— We confirm having sold you two carloads CAUSTIC SODA 76–78% fused, in drum, cars weighing

about 30 long tons each, at 6⅛c per pound, f.o.b. New York. Terms, net cash in exchange for Railroad Bill of Lading.

" These goods are sold to you f.o.b. New York, lighterage free if the goods are not to be re-consigned upon arrival. The cars are rolling and expected here in about one week's time.

"  Yours very truly,

" K. F. G. PRODUCTS CORP.

" Accepted.                                    R. L. Ferguson."

Plaintiff's manager at once telephoned to Robitaille saying the contract had come in the name of the K. F. G. Products Corporation about which plaintiff did not know anything, and of which it had never heard and that they had bought their goods from the defendant Franco-American Chemical Company. Thereupon Robitaille replied that the K. F. G. Corporation was all right and a responsible concern; and plaintiff accepted the contract on the faith of that representation. Plaintiff knew nothing about the K. F. G. Corporation, but did know the defendant corporation, which stood well in the trade, and it only accepted the contract with the K. F. G. Corporation because of Robitaille's representation that the latter was a responsible concern with which the defendant company was " doing the business together." There seems to be no question that the K. F. G. Corporation was irresponsible and had no assets, that it was a corporation owned and controlled by defendant company; and that it was organized for the very purpose of saving defendant from liability in transactions really had by it, but in which it used the K. F. G. Corporation as a dummy. Thus the K. F. G. Corporation would make contracts to purchase goods in a very active rising market, and if the price went up the goods would be taken and the profit which inured went to the benefit of the defendant company, while, if the market went down, the K. F. G. Corporation would repudiate the contract, the seller would only have a cause of action against the worthless corporation and the defendant company would escape liability. So too, the K. F. G. Corporation would be used as a medium by which to sell goods and if any cause of action arose from such sale, as here, the defendant company could disclaim liability. It is significant that these two carloads of caustic

soda were sold originally to the defendant company as discolored caustic soda. They were offered by the defendant company itself to the trade as caustic soda and the K. F. G. Corporation only appeared in the transaction when the contract was to be made to sell these two carloads to plaintiff as caustic soda, which the defendants well knew it was not, for caustic soda has an established trade quality and is clear white in color, while the goods delivered under this contract were discolored, dark and brownish or blackish in hue. Such goods are commercially known as " bottoms." This soda came fused in a solid mass in drums and plaintiff, relying upon the contract, had paid for the same upon receipt of the bills of lading and resold it to the Partola Manufacturing Company, which refused to accept it because it was discolored. The plaintiff finally realized three and nine-tenths cents a pound therefor from the Partola Company as discolored soda. Defendant denied the making of the representations in question and claimed that the sale was one by sample. It also introduced expert evidence that there was but a slight difference in value between caustic soda and discolored caustic soda or " bottoms." I think there was sufficient evidence to warrant the jury in finding that the representations in question were made, that they were relied on by plaintiff, that they were false and that they were known to be false. I think the jury was warranted as well in finding that this was a sale of caustic soda, as known to the trade, clear white in color; that it was not a sale by sample but by description, and that defendant well knew the goods in question were discolored, and not white caustic soda, as they themselves had bought them for discolored caustic soda or bottoms.

We should not feel called upon to disturb this judgment on any finding of fact made by the jury, but the judgment must be reversed because of an error of law by the learned trial court in laying down the rule as to the measure of damages to be awarded to plaintiff. The court originally charged that " assuming that the goods did not come up to the contract, plaintiff is entitled by way of damages to the difference between the purchase price and the market price at the time and the place of the delivery." This was the difference between the purchase price (six and one-eighth cents) and the market

price, about June 26, 1917, the time of delivery, which was six and one-half to six and three-fourths cents. Plaintiff's counsel was not satisfied with this charge, but asked the court to charge that the plaintiff, if entitled to recover at all, was entitled to the difference between the purchase price (six and one-eighth cents) and the market price, whatever they might find that to be, six and three-fourths cents more or less, and in addition thereto, to the difference between the market value of the goods as delivered, namely, three and nine-tenths cents and the purchase price, six and one-eighth cents. To this exception was duly taken. The proof as to any market value of three and nine-tenths cents was very meagre. It was based on an alleged sale finally of these goods as discolored soda to the Partola Company which is open to suspicion because of the inability to trace the shipment or show what became of it or at what price the Partola Company resold it. Also, upon this record, the testimony preponderates that the difference between clear white caustic soda and discolored caustic soda or "bottoms," at the time in question did not exceed one-half a cent a pound. It is fairly inferable that the learned trial court intended to leave to the jury as a question of fact what the market value of discolored caustic soda was when the goods were delivered, as to which market value the alleged sale to the Partola Company might be taken as some evidence; but inadvertently the words "purchase price" were used in this connection instead of "market price," and this must have led to some confusion. In any event, it was error to charge as requested by plaintiff's counsel, for under such a charge, plaintiff became entitled to two elements of recovery: (1) The difference between the purchase price and the market value of caustic soda at the time of delivery; (2) the difference between the purchase price and the price received by plaintiff on the sale of the discolored goods, or whatever the market price of such goods might then be at the time of delivery. It is capable of mathematical demonstration that the jury took its own way of assessing the damages; for on the basis of the amount of soda sold, 135,708 pounds, the verdict, $3,528.41, represents an allowance per pound of two and six-tenths cents which is the difference between six and one-half cents, which some witnesses fixed as the market price of caustic soda at the

time of delivery, and three and nine-tenths cents, which plaintiff claims to have received from the Partola Company on the sale of these goods.

The correct rule of damage applicable to this case was substantially as laid down by the court in its original charge, with the addition of interest. As announced by the Court of Appeals in *Reno* v. *Bull* (226 N. Y. 546; motion for reargument denied October 14, 1919 [227 id. 591]) the plaintiff was entitled to recover, if at all, the difference between the purchase price paid by him for these goods and the value of the goods delivered, with interest from the time of payment.

The judgment and order appealed from will be reversed and a new trial ordered, with costs to appellants to abide the event.

CLARKE, P. J., SMITH, PAGE and PHILBIN, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.